### Case No. 3,194.

COOPER v. GIBBS et al.

[4 McLean, 396.][1]

Circuit Court, D. Michigan. June Term, 1848.

PAYMENT OF PROMISSORY NOTE— NOTICE TO INDORSERS—EXTENSION TO MAKER.

1. An accepted draft will not be considered in payment of an indorsed note, unless there was an express contract that it should be so received.

2. Notice to indorsers is sufficient, if it describe the note so that the indorsers must know it, and state the payment was demanded and protest made, and that the holders look to the indorsers for payment.

3. If time be given, for a valuable consideration, the indorsers are discharged.

[At law. Action by James F. Cooper against George C. Gibbs, J. Wright Gordon, and —— Sanford as joint indorsers of a promissory note. The defendant Sanford was not served with process, and the other defendants pleaded that fact in abatement. Plaintiff replied, and the demurrer of defendants to the reply was overruled. Case No. 3,195, next following.]

Mr. Hand, for plaintiff.

OPINION OF THE COURT. Gentlemen of the Jury: This suit is brought by the indorsee against the indorsers of the following promissory note: "Six months after date I

[1] [Reported by Hon. John McLean, Circuit Justice.]

promise to pay on the order of George C. Gibbs, James S. Sanford and J. Wright Gordon, two thousand two hundred and fifty dollars, with interest, for value received, at the office at the North American Banking and Trust Company, in the city of New York. (Signed) Sidney Ketchum." Indorsed by the payers in blank. The note was not paid at maturity. Stephen Merrihew, of the city of New York, a notary, was sworn as a witness, who stated that at the maturity of the note he presented it for payment, at the North American Bank and Trust Company, in the city of New York, and finding no funds in the bank to pay it, he protested the note for non-payment, and gave to the indorsers the following notice: "New York, 3d July, 1839, $2,250.00. Gentlemen—Please to take notice, that a promissory note, made by Sidney Ketchum, for two thousand two hundred and fifty dollars, with interest, indorsed by you, is protested for non-payment, and that the holders look to you for payment thereof. (Signed) Stephen Merrihew, Notary Public," and directed to George C. Gibbs, Jas. S. Sanford, J. Wright Gordon, at Marshall, Michigan.

First Ground of Defense. This notice is objected to as insufficient. We think it contains all the requisites of a good notice. In the first place, it describes the note with such certainty as not to be mistaken by the indorsers, and they are informed that it was protested for non-payment, and that the holder will look to them for payment. Nothing more than this was required. The signatures are printed, which is proved to be the mode of signing in New York.

Second Ground of Defense. That the note was paid. Sidney Ketchum being sworn, states that the defendants were accommodation indorsers. The note was not paid by him, and the witness does not know that it would do to say it was paid. Witness was in New York, and Ogden informed him if he would get a good acceptance he would take it for the note, and witness proposed the name of Schuyler, a flour dealer, then in New York City. Ogden said he would inquire into the circumstances of Schuyler, and in a day or two he told witness that he would take the acceptance. Witness procured the acceptance, went to Ogden's office, found him absent. Ogden's clerk took the acceptance, and, on calculation, found it overpaid the note about fourteen or fifteen dollars, witness thinks, and the clerk paid to witness the balance at the time. Witness requested the delivery of the note, but the clerk declined giving it, saying that Ogden would return in a few minutes, and witness had better speak to him on the subject of the note. Ogden advanced some money to the plaintiff, and was the holder of the note now sued on, at least one-half of the amount of it, and he received it for collection. Ketchum called on witness and inquired whether witness would take a good acceptance in

payment of the note. Witness said he would. The acceptance of Schuyler was offered. Witness made inquiry as to his responsibility, and could ascertain nothing. Then he informed Ketchum that he could not take the acceptance in payment of the note, but would receive it and any thing else in the shape of security, and would apply any payments in discharge of the note. The acceptance was taken on these conditions. Witness instructed his book-keeper to apply any payments, made on the acceptance, in discharge of the note. The acceptance was for $2,350. The note was for $2,250. The acceptance dated 6th July, 1839; interest up to that time $80.07; interest for sixty days, the time of the acceptance, $57, making the sum of $2,387.07, from which deduct $37 there will be left the sum $2,350.07, for which the acceptance was drawn. The thirty seven dollars were paid by Ketchum. Witness never agreed to give up the note on the receipt of the acceptance; but gave Ketchum to understand that he would not receive the acceptance in payment; that he received it as security. The plaintiff afterward took up the note, paying witness the amount advanced by him.

Mr. Ketchum speaks with much hesitancy, gentlemen, in regard to the payment of the note by the acceptance. Indeed, he does not say when the acceptance was handed to Ogden, that it was received in payment. He requested of the clerk the delivery of the note, but he declined giving it, and referred the witness to Mr. Ogden. And on his suggestion, witness permitted the note to remain in his hands until the acceptance was due. If the acceptance was given in payment of the note, it was a discharge of it as fully as if the money had been paid. And if this had been done, the note would hardly have been left in the hands of Mr. Ogden. The fact of retaining the note, with the assent of Ketchum, until the acceptance was due, would seem to imply that the note was not considered as discharged by the accepted draft. If by this the note were paid, it could be of no value in the hands of Ogden, or of any other person, who had notice that it had been paid. The statement of Mr. Ogden, who has no interest in the transaction, is explicit, that he informed Mr. Ketchum the draft would not be received in payment of the note, but as security; and that any amount paid upon it should be applied in discharge of the note. And the note, after the delivery of the acceptance to Ogden, being left in his possession, is corroborative of his statement. It will be for the jury to pass upon the fact of payment. To make the acceptance a payment of the note, it must be made clearly to appear to the jury, that it was so received. It seems that the suit which had been commenced on the note, was discontinued on the acceptance being given. And the second acceptance was given for the same amount as was due on the note. There was some money paid at the time the acceptance was renewed. This money, Mr. Ketchum says, was paid to him by the clerk; but Schuyler and Ogden both say the money was paid by Ketchum. Ogden says that he was not satisfied with the responsibility of Schuyler.

That time was given for the payment of the money, which releases the indorsers, is the third and last ground of defense. Was the acceptance given for, or on account of, the note? If it were so given, as a security, it did not postpone an action upon the note. To discharge the indorsers, there must be a valid agreement between the holder and maker of the note, to postpone the payment for some time. And to have this effect, witness says that Ogden said he believed Schuyler was good, but he would rather that witness would leave the note until the acceptance became due, for the reason that he had no interest in the matter—was doing business for others; to which witness assented. Witness was arrested in New York, on the note, and was required to give bail, unless the suit should be settled. Ogden agreed with witness that he would receive an acceptance in payment of the note; and the acceptance was given, and the suit was settled. Ogden is reputed to be a lawyer in New York. Witness has been sued on the note in Michigan. The acceptance has never been given up. It was, witness thinks, payable in sixty days. It was due before witness was again sued on the note, a year or more. At the time Ogden agreed to take a good city acceptance, and when the acceptance was taken, nothing was said as to what should be done with the note. At the time the acceptance was given, and ever since, witness has been greatly embarrassed; thinks he gave but one acceptance. Witness is positive that at the time the acceptance was given, a sum of money was paid to him, which was the amount the acceptance exceeded the note. Schuyler had no assets of witness. Schuyler says, on or about the 4th of September, 1839, witness accepted a draft drawn by Ketchum, payable to his own order, for two thousand three hundred and fifty dollars, payable in sixty days. It was indorsed to Ogden. This draft became due about the 6th of November, following. Witness accompanied Ketchum to Ogden's office, where Ketchum gave Ogden his draft or note indorsed by witness, for the above amount, and took up the first acceptance. Witness was able to pay the amount when the second draft became due. Ketchum paid some money on the renewal of the acceptance. It must be an agreement, as if suit should be commenced before the time agreed upon, a court of chancery would enjoin the party from prosecuting the suit. And such an agreement must be founded on a valuable consideration.

Such an agreement may be proved by parol or by writing, and must have been so expressed as to be understood by the parties. Such an agreement does an injury, in a legal

point of view, to the indorsers. They have the right to pay the note to the legal holder, and be subrogated into the rights of the holder, to prosecute the makers of the note. But if he has made such a contract with the holder, as to prevent any action from being brought on the note for a given time, this right of the indorsers is impaired, and they are consequently relieved from responsibility. If the acceptance was not received in payment, but was received with an express agreement that there should be no proceeding on the note until the acceptance become due, the defendants are discharged. The holder of the note was not bound to sue the maker, but he discharged the indorsers if he made a contract, founded on a valuable consideration, that he would not sue for a given time. And if, as a condition to the giving of the acceptance, the holder agreed to wait until the acceptance became due, the defendants are discharged. Whether there was such an agreement, is for the jury to determine. If there was a contract of this import, it must have been made with Mr. Ogden, the witness. All that is pretended to have been done in regard to the acceptance was done by him; he, in fact, at the time, being the holder of the note, owning one half of it, and having it in his hands for collection. And Ogden, from general recollection, says that he made a general agreement with Ketchum respecting the note, except what he has stated on his examination, that on taking the acceptance there was no agreement to give time. If you find for the plaintiff, you will give interest on the note; if for the defendant, your verdict will be general.

Jury could not agree, and were discharged.